E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
COLIN S. SCOTT (Cal. Bar No. 318555)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone:  (213) 894-3159
    Facsimile:  (213) 894-0141
    E-mail:  colin.scott@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

JAMES ESPINOZA,
  aka "Mouse,"
RUBEN TORRES,
  aka "Troubles," and
EDDIE VASQUEZ,
  aka "Trusty,"

    Defendant

No. CR 22-00575-SB-2

PLEA AGREEMENT FOR DEFENDANT DEFENDANT RUBEN TORRES

1.   This constitutes the plea agreement between Ruben Torres ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case. This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

DEFENDANT'S OBLIGATIONS

2.   Defendant agrees to:

    a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts two and eleven of the indictment in United

States v. James Espinoza, CR No. 22-00575-SB-2, which charges defendant with Conspiracy to Distribute Methamphetamine in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(viii) and Trafficking in Firearms in violation of 18 U.S.C. § 933(a)(1).

  b. Not contest facts agreed to in this agreement.

  c. Abide by all agreements regarding sentencing contained in this agreement.

  d. Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

  e. Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

  f. Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

  g. Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

## THE USAO'S OBLIGATIONS

3. The USAO agrees to:

  a. Not contest facts agreed to in this agreement.

  b. Abide by all agreements regarding sentencing contained in this agreement.

  c. At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant. Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

  d. At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing,

recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

   e. Recommend that defendant be sentenced to a term of imprisonment no higher than the low end of the applicable Sentencing Guidelines range, provided that the offense level used by the Court to determine that range is 35 or higher.  For purposes of this agreement, the low end of the Sentencing Guidelines range is that defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

## NATURE OF THE OFFENSES

  4. Defendant understands that for defendant to be guilty of the crime charged in count two of the indictment, that is, Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A)(iii), the following must be true:

   a. There was an agreement between two or more persons to distribute or to possess with intent to distribute at least 50 grams methamphetamine; and

   b. Defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.

  5. Defendant understands that for defendant to be subject to the statutory maximum and statutory minimum sentence set forth below, the government must prove beyond a reasonable doubt that defendant conspired to distribute and possess with intent to distribute at least 50 grams of methamphetamine.  Defendant admits that defendant, in fact, conspired to distribute and possess with intent to distribute at least 50 grams of methamphetamine as described in count two of the indictment.

  6. Defendant understands that for defendant to be guilty of the crime charged in count 11, that is, Trafficking in Firearms, in violation of Title 18, United States Code, Section 933(a)(1) the following must be true:

   a. defendant knowingly shipped, transported, transferred, caused to be transported, or otherwise disposed of, firearms, namely a Ruger model Super

1  Blackhawk, .44 caliber revolver, bearing serial number 84-53922, and a Smith &
2  Wesson, model 14, .38 caliber revolver, bearing serial number K611984;
3        b.    the movement of this firearm affected interstate or foreign commerce,
4  and
5        c.    defendant knew or had a reasonable cause to believe that the use,
6  carrying, or possession of the firearm by the recipient would constitute a felony.
7     7.   Defendant understands that for defendant to be guilty of aiding and abetting
8  the crime charged in count 11, that is the Trafficking in Firearms, in violation of Title 18,
9  United States Code, Section 933(a)(1), 2(a) the following must be true:
10       a.    someone else committed the crime of trafficking in firearms;
11       b.    defendant aided that person with respect to at least one element of the
12 crime;
13       c.    defendant acted with the intent to facilitate the crime; and
14       d.    defendant acted before the crime was completed.

## PENALTIES

16    8.   Defendant understands that the statutory maximum sentence that the Court
17 can impose for a violation of Title 21, United States Code, Sections 846, 841(a)(1),
18 (b)(1)(A)(viii), is: life imprisonment; a lifetime period of supervised release; a fine of
19 $10,000,000 or twice the gross gain or gross loss resulting from the offense, whichever
20 is greatest; and a mandatory special assessment of $100.
21    9.   Defendant understands that the statutory maximum sentence that the Court
22 can impose for a violation of Title 18, United States Code, Section 933(a)(1) is: 15 years
23 imprisonment; a three-year period of supervised release; $250,000, or twice the gross
24 gain or gross loss resulting from the offense, whichever is greatest; and a mandatory
25 special assessment of $100.
26    10.   Defendant understands, therefore, that the total maximum sentence for all
27 offenses to which defendant is pleading guilty is: life imprisonment; a lifetime period of
28

supervised release; a fine of $10,250,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

11. Defendant understands that absent a determination by the Court that defendant's case satisfies the criteria set forth in 18 U.S.C. § 3553(f), the statutory mandatory minimum sentence that the Court must impose for a violation of Title 21, United States Code, Section 841(a)(1), (b)(1)(A)(viii) is: ten years' imprisonment, followed by a five-year period of supervised release, and a mandatory special assessment of $100.

12. Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements. Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release.

13. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

14. Defendant understands that under 21 U.S.C. § 862a, defendant will not be eligible for assistance under state programs funded under the Social Security Act or Federal Food Stamp Act or for federal food stamp program benefits, and that any such

benefits or assistance received by defendant's family members will be reduced to reflect defendant's ineligibility.

15. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is automatic removal from the United States.

## FACTUAL BASIS

16. Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty. Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 18 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on a date unknown, but no later than on or about June 7, 2022, and continuing until on or about August 1, 2022, in Los Angeles County, within the Central District of California, defendant conspired and agreed with a co-defendant to knowingly and intentionally distribute and possess with intent to distribute methamphetamine, a

Schedule II controlled substance. Defendant joined in the agreement knowing of its purpose and intending to help accomplish it.

Defendant committed the following acts in furtherance of the conspiracy, as follows:

On June 18, 2022, in a telephone call using code language, a co-defendant agreed to sell approximately one pound of methamphetamine to a person he believed was a drug customer, but who was, in fact, a confidential source working with law enforcement (the "CS").

On June 2, 2022, defendant told a person whom he believed to be a drug customer but who was, in fact, and undercover ATF Special Agent (the "UC") that he could get the UC methamphetamine.

On June 21, 2022, at approximately 4:28 p.m., defendant and the co-defendant drove a Honda Accord to a warehouse in Los Angeles County, within the Central District of California to sell methamphetamine to the CS. Upon meeting at the warehouse, the co-defendant handed a clear plastic package to the CS that contained 438 grams of actual methamphetamine. The CS then paid the co-defendant $1,400 in cash for the methamphetamine, and they discussed selling the CS 10-15 pounds of methamphetamine in the future. Defendant told the CS that the "more you get, we will make it worth your while" and that the future price of the methamphetamine would be less. Defendant then asked the UC what quantity they wanted to purchase for the next transaction. The UC stated it would be between ten to fifteen pounds. Defendant stated that if the UC wanted more now, they could handle it as well.

On June 26, 2022, a co-defendant, in a telephone call using coded language, arranged to sell one pound of methamphetamine and several firearms to the CS and eventually agreed to meet in a warehouse within Los Angeles. Then, on June 27, 2022, defendant and co-defendant arrived at the warehouse in a Hummer. The co-defendant handed a duffle bag from the trunk of the Hummer to the CS. Inside the duffle bag were two firearms: (1) a Walther, model P22, .22 caliber pistol bearing serial number

WA287403 and (2) a Mossberg, model 510, 20 Gauge shotgun, bearing serial number V0033406.  The CS then paid the co-defendant $1,800 for the two firearms.  Defendant and the co-defendant then left the warehouse to pick up the methamphetamine.  At approximately 5:33 p.m., defendant and the co-defendant returned, this time in a Honda Accord.  The co-defendant removed two plastic bags containing 880 grams of actual methamphetamine and gave them to the CS.  The CS then paid the co-defendant $2,800 for the methamphetamine.  Defendant then told the CS that their source could get any amount of methamphetamine the CS wanted, and that defendant could go get five more pounds of methamphetamine right then.

On July 8, 2022, the co-defendant and CS agreed by text message to meet at a warehouse to sell two pounds of methamphetamine and two firearms.  At approximately 5:56 p.m., defendant and the co-defendant arrived at the warehouse in a Honda Accord.  Defendant, while standing at the trunk of the Honda Accord, put on nitrile gloves and retrieved a camouflage duffle bag from the trunk.  Defendant then carried the camouflage duffle bag to the lounge area where he handed it to UC.  Defendant removed an AK-type rifle, later identified as a Riley Defense, RAK 47, 7.62 caliber rifle, bearing serial number B37366, from the bag.  The co-defendant advised that the price of the firearm was $2,500, after which the UC paid defendant $2,500.  The co-defendant removed two plastic bags that contained 883 grams of actual methamphetamine and gave them to the CS.  The CS then paid the co-defendant $2,800 for the methamphetamine.

In conversations from July 20-21, 2022, the co-defendant offered to sell the CS two pounds of methamphetamine at the same warehouse.  On July 21, 2022, defendant and the co-defendant arrived in a Honda Accord.  Defendant removed three clear packages from a black bag, which contained a total of 1,326 grams of actual methamphetamine, and handed them to the CS.  The CS then paid the co-defendant $4,200 for the methamphetamine.  Defendant also offered two revolvers for sale and indicated that they were "name brand."  The UC proposed purchasing them for $500, saying that "I gotta be able to make some money on it," indicating that the UC would be

8

reselling the firearms. Accordingly, defendant knew or had a reasonable cause to believe that the use, carrying, or possession of the firearm by the CI would constitute a felony. Afterwards, the UC paid defendant $2,000 for the two revolvers, which were later determined to be a Ruger, Super Blackhawk, .44 caliber revolver, bearing serial number 84-53922, and a Smith & Wesson, model 14, .38 caliber revolver, bearing serial number K611984.

Defendant further conspired to sell firearms, and willfully engaged in the business of dealing the firearms described above and in **Appendix A**.

## SENTENCING FACTORS

17. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate between the mandatory minimum and up to the maximum set by statute for the crimes of conviction.

18. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

| | | |
|---|---|---|
| Base Offense Level: | 36 | U.S.S.G. § 2D.1.1(a)(5),(c)(2) |
| Possession of Dangerous Weapon | +2 | U.S.S.G. § 2D1.1(b)(2) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate. Defendant understands that defendant's offense level could be increased if defendant is a career offender under U.S.S.G. §§ 4B1.1 and 4B1.2. If defendant's

offense level is so altered, defendant and the USAO will not be bound by the agreement to Sentencing Guideline factors set forth above.

19. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

20. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

21. Defendant understands that by pleading guilty, defendant gives up the following rights:

   a. The right to persist in a plea of not guilty.

   b. The right to a speedy and public trial by jury.

   c. The right to be represented by counsel –- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel –- and if necessary have the Court appoint counsel –- at every other stage of the proceeding.

   d. The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

   e. The right to confront and cross-examine witnesses against defendant.

   f. The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

   g. The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

   h. Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

22. Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty. Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

## LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

23. Defendant agrees that, provided the Court imposes a total term of imprisonment within or below the range corresponding to an offense level of 35 and the criminal history calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (f) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Second Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

24. The USAO agrees that, provided (a) all portions of the sentence are at or above the statutory minimum and at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 35 and the criminal history calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

11

## RESULT OF WITHDRAWAL OF GUILTY PLEA

25. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## EFFECTIVE DATE OF AGREEMENT

26. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

27. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached. All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

28. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

    a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

    b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

    c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

## COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES OFFICE NOT PARTIES

29. Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30. Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence,

and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 18 are consistent with the facts of this case. While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

31. Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement. Defendant understands that no one –- not the prosecutor, defendant's attorney, or the Court –- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be between the statutory mandatory minimum and within the statutory maximum.

## NO ADDITIONAL AGREEMENTS

32. Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///
///
///
///
///
///
///

## PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

33. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

E. MARTIN ESTRADA
United States Attorney

*Colin Scott*                                  9/01/2023
COLIN S. SCOTT                                 Date
Assistant United States Attorney

/s/                                            8.31.23
RUBEN TORRES                                   Date
Defendant

/s/                                            8.31-23
JAMES R. TEDFORD II                            Date
Attorney for Defendant RUBEN TORRES

15

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____   8-31-23
RUBEN TORRES                Date
Defendant

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am RUBEN TORRES's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____          8-31-23
JAMES R. TEDFORD II                  Date
Attorney for Defendant RUBEN TORRES

# APPENDIX A

| Date Defendant Trafficked Firearm(s) | Descriptions of Firearms Sold by Defendant |
|---|---|
| June 2, 2022 | 1. a privately manufactured, .300 caliber rifle, bearing no manufacturer's mark or serial number (commonly referred to as a "ghost gun"). |
| June 7, 2022 | 2. a Smith & Wesson, model 637 Airweight, .38 Special caliber, revolver, bearing serial number DNM7411; <br><br> 3. a Bryco Arms, model 48, .380 caliber pistol, bearing serial number 817085; <br><br> 4. a Ruger, model Mark II Target, .22 caliber pistol, bearing serial number 211-24703; and <br><br> 5. a Savage Arms, model Mark II, .22 caliber rifle, bearing serial number 420006. |
| August 1, 2022 | 6. an Intratec, model AB10, 9mm caliber pistol, bearing serial number A015256; and <br><br> 7. a privately manufactured, Polymer 80, 9mm caliber ghost gun pistol, bearing no serial number. |